IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 31, 2023 Session

## WILLIAM J. NEEDHAM ET AL. v. ROBERT G. GERWIG II

**Appeal from the Circuit Court for Hamilton County**
No. 19C1233    John B Bennett, Judge

_____

**No. E2023-00394-COA-R3-CV**

_____

In this personal injury case, Appellants, Husband and Wife, alleged that Appellee's dog collided with Husband's bicycle causing him to crash and sustain injuries. The trial court granted summary judgment in favor of Appellee dog owner, finding that Appellants failed to meet their burden to show that Appellee's dog was involved in the accident. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Zachary William England, Chattanooga, Tennessee, for the appellants, William J. Needham, and Lisa Needham.

Douglas M. Campbell, Jr. and Douglas M. Campbell, Sr., Chattanooga, Tennessee, for the appellee, Robert G. Gerwig, II.

**OPINION**

## I. Background

On April 16, 2019, William Needham set out on a bicycle ride along a route he frequented. Mr. Needham alleges that around 4:00 p.m., while traveling down Smith Road in Georgetown, Tennessee at approximately 20 miles per hour, the tire of his bicycle collided with a dog that was running towards him. The collision allegedly caused Mr. Needham to fall from the bicycle and sustain injuries. The property from which the dog allegedly ran belongs to Appellee Robert Gerwig, II. At the time of the incident, Mr. Gerwig was at an appointment at the Veterans Affairs ("VA") Hospital in Nashville.

However, his adult son, Zach Gerwig, was visiting the property. When Mr. Needham fell from his bicycle, Zach Gerwig was in his father's garage, using Robert Gerwig's tools to rebuild his car's transmission. Zach Gerwig did not see the accident but heard a "thud and a grunt." When Zach Gerwig turned to look, he saw Mr. Needham on the pavement under his bicycle. Zach Gerwig and his friends, Lexi Hughes and Wayne Kecskes, went to assist Mr. Needham after the accident. Mr. Needham called his wife, Lisa Needham (together with Mr. Needham, "the Needhams" or "Appellants"), to pick him up and take him to an emergency care facility. Thereafter, it was determined that Mr. Needham had sustained a severely broken left clavicle that would require surgery.

On November 4, 2019, in the Hamilton County Circuit Court ("trial court"), the Needhams filed a complaint against Robert Gerwig for damages resulting from the bicycle accident. In pertinent part, the Needhams alleged, that, on April 16, 2019: (1) Mr. Needham was riding his bicycle on Smith Road, a public road; (2) "the Defendant's dogs were uncontrolled by being allowed to roam free and were not properly fenced"; (3) "[t]he dogs pursued" Mr. Needham on a public roadway when Mr. Needham hit one of the dogs; (4) "[t]he Defendant knew or should have known about the dogs' propensity to be aggressive" and to "chase after people"; and (5) Mr. Gerwig was "negligent by having these dogs roaming free, uncontrolled, and not having them in a fenced enclosure." On May 11, 2020, the Needhams filed an amended complaint adding Mrs. Needham's loss of services, consortium, and society claims. Neither the complaint nor the amended complaint listed Mr. Gerwig's address as the property from which the dogs chased Mr. Needham, nor do the complaints provide a description of either of the dogs that allegedly chased him.

On May 28, 2020, Mr. Gerwig filed an answer to the amended complaint. In pertinent part, he admitted that he owned two dogs at the time of the accident but asserted that neither of his dogs were described in the Needhams' amended complaint.[1] Mr. Gerwig further alleged that, to his knowledge, his dogs were not roaming free on the day of the accident. As such, Mr. Gerwig asserted that the lawsuit failed to state a claim upon which relief could be granted because, to his knowledge, he was not the owner of the dogs involved in the accident.

On June 1, 2022, Mr. Gerwig filed a motion for summary judgment alleging that there was no proof that Mr. Needham's injuries were caused by his dog. On September 2, 2022, the Needhams filed a response to the motion for summary judgment, asserting that the motion was premature because discovery was ongoing. On September 12, 2022, the trial court entered an order granting the Needhams an additional 45 days to complete discovery.

---

[1] There are instances in the record where the parties allege that there were multiple dogs at Mr. Gerwig's residence the day of the incident. However, as discussed further below, the summary judgment evidence shows that, at the time the lawsuit was filed, Mr. Gerwig owned one dog, a purebred English bulldog named Stella. The issue in this appeal involves whether Stella collided with Mr. Needham's bicycle the day of the incident.

On October 28, 2022, the Needhams filed a supplemental brief in opposition to the motion for summary judgment. Therein, the Needhams argued that genuine issues of material fact existed, as evidenced by the inconsistencies between Robert Gerwig's statements and witnesses' statements. On January 4, 2023, Robert Gerwig filed a supplement brief in support of his motion for summary judgment. Mr. Gerwig alleged that there was no proof showing that he owned the dog that collided with Mr. Needham.

On January 9, 2023, the trial court heard oral arguments on the motion for summary judgment. The trial court instructed the parties to brief the issue of whether a statement Mr. Needham alleged Zach Gerwig made to him after the accident fell under an exception to the hearsay rule. Robert Gerwig filed his second supplemental brief on January 10, 2023; the Needhams filed their second supplemental brief on January 12, 2023. On January 23, 2023, the trial court heard arguments.

By order of February 22, 2023, the trial court granted Mr. Gerwig's motion for summary judgment. The trial court found that: (1) ownership of the dog was a necessary element the Needhams needed to prove to recover any damages; (2) ownership of the dog must be proven by admissible evidence; (3) the Needhams' only proof of Mr. Gerwig's ownership of the dog was from inadmissible hearsay (from Zach Gerwig) that did not qualify as an excited utterance or a statement made by an agent of Robert Gerwig; thus (4) there was no proof that the dog that collided with Mr. Needham was owned by Mr. Gerwig. The Needhams filed a timely appeal.

## II. Issue

Although the Needhams list two issues for appeal, the determinative issue is whether the trial court erred in granting Mr. Gerwig's motion for summary judgment.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps***., 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim, or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Center of Memphis,***

*MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted).  Furthermore,

> "[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial."  Tenn. R. Civ. P. 56.06.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* [*Ltd. v. Zenith Radio Corp*.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)].  The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

## IV.  Analysis

As an initial matter, from the pleadings, the Needhams' theory of liability is unclear. In their amended complaint, the Needhams appear to allege a common-law negligence claim.  We glean this because they did not cite the "Dog Bite Statute," which the Tennessee Legislature enacted in 2007.  Under Tennessee Code Annotated section 44-8-413(a)(1), dog owners are held strictly liable for injuries to a person when the dog is "running at large" in a public place, regardless of whether the dog has shown dangerous propensities or whether the dog's owner knew or should have known of the dog's dangerous propensities. *See* Tenn. Code Ann. §§ 44-8-413(a)(1), (2); *see also* ***Cruise v. Byrd***, No. M2022-01578-COA-R3-CV, 2023 WL 4630165, at *3 (Tenn. Ct. App. July 20, 2023).[2]  As noted above, the Needhams did not rely on the Dog Bite Statute in their amended complaint, nor do the parties analyze the statute in their appellate briefing.  The Needhams' appellate brief mentions this statute only in passing, stating that Mr. Gerwig "raised [in the motion for summary judgment] cursorily that the cause [of action] was controlled by Tenn. Code Ann. § 44-8-413."  Despite the Needhams' failure to plead the Dog Bite Statute, their amended complaint sufficiently alleged facts to support a claim under section 44-8-413(a)(1), *i.e.,* that "the Defendant's dogs were uncontrolled by being allowed to roam free," and that "[t]his dog attack happened on Smith Road, a public road."  Notwithstanding the lack of clarity concerning the Needhams' theory of liability, it is undisputed that the ownership of the dog that allegedly caused Mr. Needham's accident is a material fact and an essential

---

[2] The statute codified certain exceptions to the general rule, most notably the residential exception, *i.e.,* when a dog causes damage to a person while the person is on the residential property of the dog's owner, the claimant is required to establish "that the dog's owner knew or should have known of the dog's dangerous propensities." Tenn. Code Ann. § 44-8-413(c)(1); *see also* ***Searcy v. Axley***, No. W2017-00374-COA-R3-CV, 2017 WL 4743111, at *6 (Tenn. Ct. App. Oct. 19, 2017).

element of the Needhams' claim against Mr. Gerwig. As the party moving for summary judgment, Mr. Gerwig bore the burden of either: (1) affirmatively negating an essential element of the Needhams' claim; or (2) showing that the Needhams' evidence at the summary judgment stage was insufficient to establish their claim. *See Rye*, 477 S.W.3d at 264. As discussed further below, in the motion for summary judgment, Mr. Gerwig alleged "that there is no proof that [Mr. Needham's] injuries were caused by [Mr. Gerwig's] dog." Accordingly, Mr. Gerwig argued that summary judgment was appropriate.

Under Tennessee Rule of Civil Procedure Rule 56.03, the party moving for summary judgment must submit a statement of undisputed material facts "to assist the [c]ourt in ascertaining whether there are any material facts in dispute." Tenn. R. Civ. P. 56.03. The statement of undisputed material facts is a "concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact shall be set forth in a separate, numbered paragraph[, and each] fact shall be supported by a specific citation to the record." Tenn. R. Civ. P. 56.03. The party opposing the motion for summary judgment must submit a "response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for the purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." Tenn. R. Civ. P. 56.03. "Each disputed fact *must be supported by specific citation to the record*." Tenn. R. Civ. P. 56.03 (emphasis added). The non-movant may also respond with "a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried." Tenn. R. Civ. P. 56.03. As with the above requirements, each disputed fact shall be set forth in a numbered paragraph with specific citations to the record. Tenn. R. Civ. P. 56.03. "The purpose of these requirements is to 'assist the Court in focusing on the crucial portions of the record' in determining whether there is a genuine issue requiring a trial on the merits." *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001) (citing Advisory Committee Comment to Tenn. R. Civ. P. 56.03). If the moving party complies with Rule 56.03, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

In compliance with Rule 56.03, Mr. Gerwig filed a statement of undisputed material facts. Relying on his deposition and affidavit, Zach Gerwig's affidavit, and Mr. Needham's deposition, Mr. Gerwig submitted that the following facts were undisputed:

4. At the time of the suit, [Mr.] Gerwig owned a dog named Stella.
5. Stella is a purebred English bulldog.

\*\*\*

8. Stella is "built like a tank".

- 5 -

12. That morning [Mr. Robert] Gerwig left Stella inside the house.

***

21. This incident occurred April 16, 2019.

***

26. Out of the corner of his eye, [Mr.] Needham saw a dog coming from his left.
27. The dog ran in front of [Mr]. Needham, who hit it.

***

30. The dog was mostly white, medium build, with brown eyes.

***

36. [Mr.] Needham said a dog had run out in front of him causing him to crash.
37. William Needham described the dog as medium built, mostly white, short-haired dog with brown eyes, and not of a recognizable breed.
38. At the time of this occurrence, the defendant's large, old purebred English bulldog was inside his house and not involved in this incident.

Concerning paragraphs 37 and 38, Robert Gerwig cited Zach Gerwig's affidavit to support these facts. Zach Gerwig's affidavit provided:

5. While I was working on my car and while Stella was confined in the house, a man who identified himself as William Needham wrecked his bicycle on the street in front of my father's home.

6. We went out to help him, and he said that, while riding his bicycle, he had struck a dog with his front tire.

7. The bicyclist described the dog that hit him as a medium built, mostly white, shorthaired dog with brown eyes, and not of a recognizable breed.

8. At the time of this incident, my father's purebred English bulldog Stella was confined inside his home.

For completeness, we note that Zach Gerwig's affidavit contradicts his deposition testimony concerning Mr. Needham's description of the dog. In his deposition, Zach Gerwig testified that Mr. Needham did not describe the dog that allegedly caused his accident. In his deposition, Mr. Needham described the dog as "mostly white, medium build, brown eyes" but noted that he "could not know" if the dog was of a particular breed. In this regard, paragraph 37 of Mr. Gerwig's statement is supported by Mr. Needham's own testimony.

As demonstrated above, Mr. Gerwig's statement set out the following allegedly undisputed facts: (1) the dog that Mr. Needham believed struck his front tire was of a medium build and not of a recognizable breed; and (2) Stella, Mr. Gerwig's large, old, purebred English bulldog, was inside the house when Mr. Needham crashed and was not involved in the incident. Under our summary judgment rules, the burden then shifted to the Needhams to respond and set forth specific facts to demonstrate that there was a genuine issue for trial, *i.e.,* that there was a genuine issue as to whether Stella collided with Mr. Needham's bicycle. *Rye*, 477 S.W.3d at 265.

The Needhams filed a response to Mr. Gerwig's statement of undisputed facts, in which they responded to each of Mr. Gerwig's alleged facts through paragraph 34. Thereafter, *the Needhams provided no response.* Concerning paragraphs 4, 5, 8, 21, 26, 27, and 30, the Needhams admitted that these statements of fact were undisputed.[3] The Needhams disputed paragraph 12, stating that Robert Gerwig "gave conflicting testimony [in his deposition] as to what 'inside' meant and where exactly the dogs were put that morning." The Needhams cited Robert Gerwig's deposition testimony to support their contention that this fact was disputed. Turning to that testimony, Mr. Gerwig testified concerning his typical morning routine when he leaves for his appointments at the VA hospital. Relevant here, Mr. Gerwig testified that he and his wife usually "put Stella in the back room [and] make sure she's got food and water." Concerning the back room, Mr. Gerwig testified that there are pens for dogs in the back room, that it is a "big addition to the back room," is "a catch-all for right now," and that it had "everything for the dogs." When asked about Stella's care the morning of the incident, Mr. Gerwig testified that they kept Stella in the house rather than the back room because it was warm that day and the back room tends to become hot on warm days. Later, when asked about where Stella was confined when Mr. Gerwig left the morning of the incident, Mr. Gerwig testified:

> Q. Okay. From what you recall that morning, what did you do for Stella and Sugar before you left for the VA?[4]
> A. I had put food out and water and stuff and made sure they were good to go.

---

[3] The Needhams admitted paragraphs 5 and 8 for the purposes of the summary judgment motion only.
[4] Whether there was a second dog named Sugar at the Gerwig residence the day of the incident is discussed further below.

Q.  Sure.  Food and water outside for them?
A.  In the back – in the back room there.  And then – we have water inside so they stayed in the house.
Q.  Okay.  So did you – before you left for the VA that day, did you put the dogs out in the pen that you referenced or in the back room?
A.  It was in the house.

On this Court's review, Mr. Gerwig's testimony does not conflict as the Needhams allege. Rather, Mr. Gerwig consistently testified that he left Stella inside the house the morning of the incident.  Given Mr. Gerwig's consistent testimony, the Needhams failed to dispute that Mr. Gerwig left Stella in the house the morning of the incident.

Importantly, the Needhams failed to contest or even respond to fact 38, *i.e.,* that at the time of the incident, Mr. Gerwig's large old purebred English bulldog (Stella) was inside the house and not involved in the incident.  When asked at oral argument before this Court why the Needhams did not dispute this alleged fact in their response, the Needhams' counsel answered that "the issue was disputed from Mr. Needham's response in his interrogatory and in the allegations put forth."  Counsel then cited Mr. Needham's description of the dog, discussed *supra*, and Mrs. Needham's deposition testimony that she saw a dog when she arrived to pick up Mr. Needham.  Counsel argued that there was "continuous observation of the dogs via the Needham family."

Our case law is clear that when a motion for summary judgment is made and supported as provided in Rule 56, to survive the motion, the nonmoving party cannot rest on the allegations in their pleadings.  **Rye**, 477 S.W.3d at 265.  Under Rule 56.03, the Needhams were required to respond to each of Mr. Gerwig's allegedly undisputed facts, and, if the Needhams disputed a fact, they were required to provide citations to the record to support such dispute.  Tenn. R. Civ. P. 56.03.  The Needhams failed to carry this burden in their response to Mr. Gerwig's statement of undisputed material facts because they failed to respond to paragraph 38, which goes to the heart of the summary judgment motion.  *See* ***Endeavor Metals Grp. LLC v. McKevitz***, No. E2018-01724-COA-R3-CV, 2019 WL 2295961, at *3 (Tenn. Ct. App. May 29, 2019) (considering the defendant's facts as undisputed where the plaintiff failed to support each disputed fact with a specific citation to the record); *see also* ***Owens***, 77 S.W.3d at 774 (Tenn. Ct. App. 2001) (citing ***Simmons v. Harris***, No. M2000-00227-COA-R3-CV, 2000 WL 1586451, at *3 (Tenn. Ct. App. Oct. 25, 2000) ("This Court has recognized that a nonmoving party's failure to comply with Rule 56.03 may result in the trial court's refusal to consider the factual contentions of the nonmoving party even though those facts could be ascertained from the record.")).

However, because the Needhams filed their own statement of undisputed facts,[5] we consider their statement in our summary judgment analysis. In reviewing the Needhams' statement, we are mindful of their burden to present sufficient facts to dispute Mr. Gerwig's proof that Stella was inside the house and not involved in the incident.

The Needhams alleged many facts in their statement of undisputed material facts that are irrelevant to the question of whether Stella collided with Mr. Needham's bicycle.[6] Accordingly, we do not include those in our review below. The Needhams relied on the following to support their allegedly undisputed facts: (1) Zach Gerwig's deposition; (2) Zach Gerwig's affidavit; (3) Robert Gerwig's deposition; (4) Robert Gerwig's responses to interrogatories; (5) Mr. Needham's interrogatory response; (6) Mrs. Needham's deposition; (7) Ms. Hughes' deposition; and (8) an exhibit from Ms. Hughes' deposition. The Needhams did not cite to Mr. Needham's deposition. However, because our review is *de novo*, and we "must make a fresh determination that all requirements" of our summary judgment rules have been satisfied, this Court has reviewed Mr. Needham's deposition in addition to the other summary judgment evidence. *See **Bain***, 936 S.W.2d at 622; ***Abshure***, 325 S.W.3d at 103. We also note that when this Court reviews a motion for summary judgment on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Shaw v. Metro. Gov't of Nashville & Davidson Cnty.***, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted). With the foregoing in mind, we turn to the Needhams' statement of undisputed material facts.

Relevant here, the Needhams alleged:

11. Robert Gerwig testified that Sugar and Stella were both at the house.
12. Zach Gerwig testified that only Stella was there that day.
13. Zach Gerwig told [Mr. Needham] that his father had let the dogs out in the backyard on the date of the incident.

\*\*\*

18. Lisa Needham testified that she saw a dog in the yard when she picked up her husband from the scene.

\*\*\*

---

[5] We note that the Needhams filed a statement of undisputed facts and a supplemental statement of undisputed facts, which added an additional ten allegedly undisputed facts. We consider both statements.

[6] For example, the Needhams alleged, *inter alia*, that Robert Gerwig testified that he was told Brandon Hughes was helping Zach Gerwig work on his car; the Needhams also alleged that Zach Gerwig testified that Mr. Hughes came by but never got out of his car. Such facts are immaterial to the question at issue on summary judgment.

20.  Lexi Hughes originally stated the dog was outside in the front yard at the time of the crash.

21.  Lexi Hughes then testified there may have been a dog outside at the time of the crash.

\*\*\*

24.  Lexi Hughes describes the Gerwig dog as medium build.

As an initial matter, it is unclear whether the parties argue that there was one dog or that there were two dogs present the day of the incident. Regardless of the inconsistencies in the record as to this fact,[7] Mr. Needham alleges that only one dog collided with his bicycle the day of the incident. Furthermore, as noted above in Mr. Gerwig's statement of undisputed material facts, he owned one dog, Stella, at the time of the suit, and the Needhams did not dispute this fact. Accordingly, regardless of whether a second dog was present at the Gerwig house on the day of the incident, the issue is whether *Stella* struck Mr. Needham's bicycle.

Notably, the Needhams' statement of undisputed facts fails to connect *Stella* to the accident. The Needhams reference "the dogs," "a dog," and "the dog," but never make the critical connection that Stella was involved in Mr. Needham's accident. When asked at his deposition whether Mr. Needham knew if the dog in the accident had "been specifically identified," Mr. Needham testified, "No." Although this testimony alone may provide sufficient evidence to warrant the affirmance of Mr. Gerwig's motion for summary judgment, for completeness, we address the Needhams' summary judgment evidence.

Turning to paragraph 13, the Needhams cite their January 8, 2021 response to Mr. Gerwig's interrogatories as proof that Zach Gerwig told Mr. Needham that his father "had let the dogs out in the backyard on the date of the incident." The following is Mr. Needham's interrogatory response concerning his recollection of the incident:

On Tuesday April 16th on Smith Road Georgetown, TN at approximately 4 PM a dog chased me from the residence at 8007 Smith Road Georgetown, TN into the roadway and ran into my front wheel causing me to lose control of my bicycle and crash. The homeowner was not present at the time however his son and two of his friends (male and female) came from the residence to assist me off the road into their yard and secured the dog within the back yard fenced enclosure. The son of the homeowner informed me that his father had let the dog out to run from their backyard fenced area and then later left the residence and so was not at home at the time of the incident. The son said this was unusual as his father never lets the dog out. I called my wife

---
[7] These inconsistencies arise from both parties' filings throughout the case.

and she came to pick me up and transported me to the Erlanger East Emergency Care around 4:30 PM.[8]

Through the above interrogatory, Mr. Needham suggested that, after the accident, Zach Gerwig admitted to him that "the dog," presumably Stella, was involved in Mr. Needham's accident because the dog had been let out to run from the backyard fenced area. This alleged fact/statement is the genesis of the Needhams' first appellate issue, *i.e.*, whether such statement is inadmissible hearsay or whether the statement falls under a hearsay exception.[9] Nonetheless, there is no need to resolve the hearsay questions because Mr. Needham's deposition testimony, which is corroborated by Zach Gerwig's deposition testimony, contradicts the above interrogatory response.

In his October 20, 2021 deposition, which was taken after Mr. Needham swore to the above facts in his interrogatory response, Mr. Needham outlined a different recollection of events. Concerning his interaction with Zach Gerwig after the incident, Mr. Needham testified:

Q. You're on the pavement. You were down for about a minute or so?
A. A minute to two minutes.
Q. Okay. A couple of minutes. Who helped you get up? Describe the people.
A. Young man in his twenties.

\*\*\*

Q. Did he say anything to you about having witnessed the – did he witness the collision?
A. No, he did not.
Q. Okay. What did he – did he hear it?
A. Yes. That's what brought him out of the house. . . . There was a commotion that he heard that brought him out of the house.
Q. Okay. Did he identify himself and say, I'm Joe Blow or anything?
A. He said he was the son of the owner of the residence.
Q. Okay – [the residence] across the roadway there to your left?
A. Correct.

---

[8] In their appellate brief, the Needhams recount an answer to this interrogatory that differs from the answer that was attached as an exhibit to their statement of undisputed facts. The interrogatory response quoted above is taken directly from exhibit 4 of the statement of undisputed facts rather than from the Needhams' appellate brief.

[9] The Needhams argue that this statement should be admitted as proof of ownership under two hearsay exceptions: (1) 803(1.2), admission by party-opponent under the agency exception; and (2) 803(2), excited utterance.

***

Q. Okay. The man, did he pull the bike off of you and then help you up?
What did he –
A. Helped me off the roadway. Whoever recovered the bike could have been his friend.
Q. Okay. He helped you up?
A. (Moves head up and down.)
Q. All right. Then where did you go from there?
A. Into the yard and leaned me up against a tree in the yard.

***

Q. Okay. How long did it take your wife to get there?
A. Thirty minutes.
Q. Okay. In that time period, you're leaned up against the tree, did you have any other conversations with this young man . . . ?
A. Only with the individual that helped me off the pavement that identified himself as the son of the owner . . . We talked about his motorcycle crash and his broken clavicle and the surgery that he had done. He showed me that, and he still had a bandage on.
Q. So you-all are sharing similar injuries?
A. That's correct.
Q. That's what you were doing?
A. (Moves head up and down.)

When asked if Zach Gerwig said anything to Mr. Needham "about having witnessed . . . the collision," Mr. Needham testified "No, he did not." This statement contradicts the assertion in Mr. Needham's interrogatory response, *supra*, that Zach Gerwig admitted that "the dog," presumably Stella, was involved in the accident because Mr. Gerwig "had let the dog out to run from their backyard fenced area." Furthermore, when asked in his deposition whether Mr. Needham had "any other conversations" with Zach Gerwig in the thirty minutes that Mr. Needham was waiting for his wife, Mr. Needham responded that the two shared a cigarette and commiserated about bicycle and motorcycle crashes and injuries arising therefrom. Nowhere in his deposition does Mr. Needham recall that Zach Gerwig informed him "that his father had let the dog out to run[.]"

Concerning the whereabouts of the dog after the accident, in his interrogatory response, Mr. Needham stated that Zach Gerwig "and two of his friends . . . came from the residence to assist me off the road into their yard *and secured the dog within the back yard fenced enclosure.*" (Emphasis added). In their appellate brief, the Needhams rely on this statement to support their contention that summary judgment was unwarranted. However, Mr. Needham's deposition testimony directly contradicts his interrogatory response, to-

wit:

    Q. All right. You hit the pavement. Do you know where the dog went?
    A. No.
    Q. Okay. You said –
    A. He did not stay in the roadway.

Later, Mr. Needham testified:

    Q. The dog that you collided with, you never saw the dog after the impact?
    A. I did not see the dog leave the roadway.

In reviewing the record, there is no explanation for the inconsistencies between Mr. Needham's interrogatory response and his deposition testimony. Despite the fact that Mr. Gerwig called attention to these inconsistencies in his appellate brief, the Needhams do not address them in their reply brief.

    One version of Mr. Needham's testimony is corroborated by Zach Gerwig's deposition testimony, to-wit:

    A. I turned around, see him laying the road.
    Q. You're talking about Needham?
    A. Yes.
    Q. Okay.
    A. I walk up to him, asked him if he was okay and proceeded to help him up and with the bicycle, pull him onto the property, get him into some shade, get him off the road to kind of gather himself.
    Q. Okay.
    A. And that was pretty much it.

***

    Q. Okay. Do you see any animals around?
    A. No.
    Q. Okay. Any dogs whatsoever?
    A. No.
    Q. Okay. Where is Stella at this point?
    A. In the house.

***

    A. So I pulled him over to the property to set him under the tree, get him a water, anything he needed. He asked for a cigarette. I gave him a cigarette

- 13 -

and he just wanted the address to where he could contact his wife to get a ride home. . . . That was it.

\*\*\*

Q. . . . Okay. How long did it take for Mr. Needham's wife to get there?
A. Approximately 20 minutes.
Q. Okay. And during that time you just kind of had a conversation with Mr. Needham?
A. Yeah.
Q. Do you recollect what you talked over that approximate 20, minutes?
A. Talked to him about my motorcycle wreck just relating to, you know, what he was going through in the moment. . . . That's pretty much it.

\*\*\*

Q. Okay. During that 20/25-minute, you know, wait between the wreck and Mr. Needham's wife showing up, was there any more discussion about the dog that Mr. Needham alleges caused the wreck?
A. No.

When asked whether he disputed Mr. Needham's interrogatory response concerning Mr. Gerwig letting the dog out to run from their backyard, Zach Gerwig testified, "Yes."

In reviewing Zach Gerwig's deposition testimony and Mr. Needham's deposition testimony, their respective recollection of the events immediately following the accident are almost identical. Both men testified that: (1) Zach Gerwig came to help Mr. Needham after the accident; (2) there were no dogs around when Zach Gerwig arrived to help; (3) Zach Gerwig assisted Mr. Needham with removing the bicycle and Mr. Needham from the road; (4) Zach Gerwig helped move Mr. Needham under a tree and provided him water and a cigarette; (5) Mrs. Needham arrived within 20-30 minutes; and (6) during that time, Zach Gerwig and Mr. Needham discussed their respective accidents and injuries.

Concerning paragraph 18, the Needhams cited Mrs. Needham's deposition testimony to support the alleged fact that Mrs. Needham "saw a dog in the yard when she picked up her husband from the scene." This portion of Mrs. Needham's deposition testimony provides:

Q. Did you see the dogs out there?
A. I saw one dog.
Q. Do you know whether it was the dog that was involved in this or not?
A. I do not.

- 14 -

Assuming this fact to be true, by Mrs. Needham's own admission, she did not know if the dog she saw outside was the dog that was involved in the incident. Additionally, in the Needhams' statement of undisputed material facts, Mrs. Needham provided no description of the dog she saw. Thus, there is nothing to suggest that it could have been Stella. Furthermore, the record is clear that Mrs. Needham arrived on scene *twenty to thirty minutes after* Mr. Needham's accident. As such, she did not witness Mr. Needham's accident and had no firsthand knowledge concerning what dog caused the accident. Finally, Mrs. Needham's testimony contradicts her husband's testimony. As discussed above, Mr. Needham testified that he did not see where the dog went after it left the roadway, and he did not see it after the accident. Presumably, if there was a dog around when Mrs. Needham picked up Mr. Needham, he would have seen it outside at some point during the 20-30 minutes it took Mrs. Needham to arrive.

In support of their allegations that "the dog was outside in the front yard at the time of the crash" and that "there may have been a dog outside at the time of the crash," the Needhams cite to both a Facebook conversation involving Ms. Hughes and to Ms. Hughes' deposition testimony. Specifically, concerning paragraph 20, the Needhams cite to exhibit 1 to Ms. Hughes' deposition testimony for support, *i.e.,* a screenshot of a Facebook conversation from July 28, 2022 between Ms. Hughes and RaDonna Gaddis, a paralegal for the Needhams' attorney. Notwithstanding any potential hearsay issues with this exhibit, the exhibit shows that Ms. Hughes wrote the following to Ms. Gaddis:

> Well the dog was in the yard the whole time, the dog wasn't really near him[,] and he started yelling and kicking at it, provoking the dog and ended up wrecking his bike at the edge of the yard and then he got mad at us like it was our fault. We [were] trying to be nice and offer help and [were going to] help load his bike up, he was extremely rude to us and we told him he should have kept going instead of trying to act like the dog was coming after him when it wasn't. He sat at the edge of the yard and waited for his wife, the whole time we [were] trying to make sure he was okay[,] but he wasn't interested in being very nice.

When asked if Ms. Hughes knew "which dog it was," Ms. Hughes replied, "Well it wasn't any dogs['] fault[,] but I don't remember which one was out at the time." When Ms. Gaddis told Ms. Hughes that she was looking for answers as to: (1) what dogs were at the house the day of the incident, (2) whether the dogs were in the yard that day, and (3) what the dogs looked like, Ms. Hughes responded: "Yeah but a lot of those questions are impossible for any of us. It was years ago . . . I told you what I remembered. I mean any of the statements given now can be different because it was from years ago and we can only give versions we remember." Assuming, *arguendo*, that the foregoing statements are true (and ignoring any potential hearsay issues), Ms. Hughes' comments show only that an unidentified dog was in the front yard the day of the incident, but "wasn't really near [Mr. Needham]."

- 15 -

Finally, the Needhams cite Ms. Hughes' deposition testimony, to-wit:

Q. Okay. Mr. Needham has alleged through, you know his lawsuit, and some of his testimony, and whatnot, about a dog or dogs, being involved. Did you see dogs at the house that day?
A. At the time, I know that I can remember that [Robert Gerwig] had one dog. If I remember correctly, I believe that she was in heat, but she – she was never really out much. I don't remember anything about a dog, though.

***

Q. And so are you saying that there may have been a dog outside at the time he wrecked or might not have been a dog? Is that a fair statement?
A. Yeah. I guess you can say.
Q. Okay. Are you comfortable stating that there was the dog somewhere that you saw that day at [Robert Gerwig's] house, whether it was inside or out?
A. I can't say that I did see one.
Q. Okay. You've confirmed he does have at least one dog and you've seen one in the past?
A. Yeah, in the past.
Q. Okay.
A. Whenever we were there, most the day, whenever we were inside, the dog was in the house with us.
Q. I got you. What kind of dog was it, if you recall?
A. I don't remember.

***

Q. Okay. When Mr. Needham wrecked his bike, did you see strays or hear strays around at the time?
A. Not that I recall, no.
Q. Okay. Do you know where Stella would've been at this point when Mr. Needham wrecks his bike and after?
A. I want to say that she was inside because we were all out there anyways, so I don't –
Q. Yeah. Do you recall if you had seen in her in the yard that day?
A. No, I don't recall that.
Q. You might have, you might not have?
A. Yeah, maybe.

Here, Ms. Hughes merely speculates as to whether a dog was present at Mr. Gerwig's house

the day of the accident and whether a dog was outside at the time of the accident. Notably, Ms. Hughes testified that she did not witness the accident, thus she had no firsthand knowledge of whether a dog, much less Stella, caused Mr. Needham's accident. Lastly, the Needhams allege that Ms. Hughes "describes the Gerwig dog as a medium build." This is immaterial because, in their response to Mr. Gerwig's statement of undisputed material facts, the Needhams admitted that Stella is "built like a tank".

On review of the summary judgment pleadings and evidence, we conclude that Mr. Gerwig met his burden to show that Stella was not involved in Mr. Needham's bicycle accident. When the burden shifted to the Needhams to present sufficient evidence to dispute this material fact, they failed to carry their burden. Indeed, the Needhams failed to respond to the Mr. Gerwig's most critical statement of fact (number 38) that Stella was inside and not involved in the incident. Furthermore, in his deposition, Mr. Needham admitted that the dog involved in the accident had not been specifically identified. Moreover, the testimony on which the Needhams primarily rely, *i.e.,* Mr. Needham's interrogatory response, is *contradicted* by Mr. Needham's *own deposition testimony*, which in turn is *corroborated* by Zach Gerwig's deposition testimony. Although the Needhams attempt to rely on Mrs. Needham's testimony and Ms. Hughes' statements and testimony, as discussed *supra*, such evidence is insufficient to connect Mr. Gerwig's dog, Stella, to the accident. Having negated an essential element of the Needhams' lawsuit, Mr. Gerwig was entitled to summary judgment. Tenn. R. Civ. P. 56.06.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, William J. Needham and Lisa Needham, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE
